UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| LARRY PAUL WILLIAMS, | | |
| | Petitioner, | Case No. C20-1482-BHS-MLP |
| v. | | |
| JEFFREY UTTECHT, | | REPORT AND RECOMMENDATION |
| | Respondent. | |

### I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Larry Williams is a state prisoner who is currently confined at the Coyote Ridge Corrections Center in Connell, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2013 Skagit County Superior Court judgment and sentence. (Dkt. # 4.) Respondent, at the Court's direction, filed an answer to the petition together with relevant portions of the state court record. (Dkt. ## 11, 12.) Respondent argues in his answer that Petitioner's federal habeas petition is untimely under 28 U.S.C. § 2244(d). (*See* Dkt. # 11.) Petitioner filed an untimely response to Respondent's answer together with an alternative motion for equitable tolling. (Dkt. # 13.) The Court construed Petitioner's submission as merely a response to Respondent's answer and accepted the late-filed brief. (Dkt.

REPORT AND RECOMMENDATION
PAGE - 1

# 18). Respondent filed a reply to Petitioner's response (dkt. # 15), and Petitioner filed a reply in support of his request for equitable tolling (dkt. # 17). This Court, having reviewed the petition, all briefing of the parties, the state court record, and the governing law, concludes that this federal habeas action should be dismissed as untimely under § 2244(d).

## II.   BACKGROUND

On September 9, 2013, Petitioner was found guilty, following a jury trial, on charges of manslaughter in the first degree and assault of a child in the first degree.[1] (*See* Dkt. # 12, Ex. 1.) On October 29, 2013, Petitioner was sentenced to terms of 210 months confinement on the manslaughter charge and 123 months confinement on the assault charge, and the trial court ordered those sentences be served consecutively. (*Id.*, Ex. 1 at 4.)

Petitioner appealed his convictions to the Washington Court of Appeals. (*See id.*, Exs. 3-5.) On December 21, 2015, the Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. (*See id.*, Ex. 2.) Petitioner thereafter sought review by the Washington Supreme Court, and the Supreme Court denied review without comment on June 29, 2016. (*Id.*, Exs. 6-7.) The Court of Appeals issued a mandate terminating direct review on October 7, 2016. (*Id.*, Ex. 8.)

On September 26, 2017, Petitioner, through counsel, filed a personal restraint petition in the Washington Court of Appeals, and the Court of Appeals issued an unpublished opinion denying the petition on September 16, 2019. (*Id.*, Exs. 9-14.) Petitioner thereafter filed a motion for reconsideration, and the Court of Appeals denied that motion on November 25, 2019. (*Id.*, Exs. 15-16.) On December 23, 2019, again through counsel, Petitioner filed a petition for review

---

[1] The jury was unable to reach a unanimous verdict on an additional count of homicide by abuse, and the trial court declared a mistrial with respect to that count. (*See* Dkt. # 12, Ex. 3 at 4-5.)

REPORT AND RECOMMENDATION
PAGE - 2

with the Washington Supreme Court. (*Id*., Exs. 17-19.) The Clerk of the Supreme Court advised the parties on August 3, 2020 that Petitioner's motion for discretionary review had been set for consideration on the court's September 8, 2020 motion calendar. (Dkt. # 16, Ex. 1.) And, on September 9, 2020, the Supreme Court issued an order denying Petitioner's motion for discretionary review without comment. (Dkt. # 12, Ex. 20.) The Court of Appeals issued a mandate terminating Petitioner's personal restraint proceedings on October 1, 2020. (*Id*., Ex. 21.)

Petitioner now seeks federal habeas review of his judgment and sentence. Petitioner, through counsel, filed his petition for writ of habeas corpus on October 7, 2020. (*See* Dkt. # 1.)

### III.   DISCUSSION

#### A.   Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a one-year limitation period for state prisoners to file applications for federal habeas relief. *See* 28 U.S.C. § 2244(d)(1). The one-year limitation period generally begins to run from the date of the conclusion of direct review or "the expiration of the time for seeking such [direct] review," whichever is later. 28 U.S.C. § 2244(d)(1)(A). In this case, the period for direct review ended, at the latest, upon the expiration of the period for filing a petition for writ of certiorari with the United States Supreme Court. *See Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

The Washington Supreme Court denied Petitioner's petition for review on direct appeal on June 29, 2016. (Dkt. # 12, Ex. 7.) Petitioner had ninety days following the entry of that ruling (as opposed to the issuance of the state mandate), or until September 27, 2016, to file a petition for writ of certiorari with the United States Supreme Court. *See* Rules 13.1 and 13.3 of the Rules of the Supreme Court of the United States. Because Petitioner did not file a petition for writ of certiorari, his conviction became final on September 27, 2016. *See* 28 U.S.C. § 2244(d)(1)(A).

Petitioner's one-year statute of limitations began to run the following day. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).

The one-year limitation period is tolled for any "properly filed" collateral state challenge to the state conviction. 28 U.S.C. § 2244(d)(2). Petitioner filed a timely personal restraint petition in the Washington Court of Appeals on September 26, 2017, which stopped the clock on the federal statute of limitations. At that time, 363 days had run on the statute of limitations. The Washington Court of Appeals issued a mandate in Petitioner's personal restraint proceedings on October 1, 2020, thus concluding review in the state courts. The statute of limitations began to run again the following day, Friday, October 2, 2020, with two days remaining in the limitations period. Because the last day of the limitations period fell on a Sunday, the limitations period continued to run until the end of the following day, Monday, October 5, 2020. *See* Fed. R. Civ. P. 6(a)(1)(C). Petitioner's counsel did not file Petitioner's federal habeas petition until October 7, 2020, two days after the statute of limitations expired.

Petitioner asserted in his petition that the petition was timely filed. (Dkt. # 4 at 4.) Petitioner appears to have based that assertion on two key factors: (1) his belief that the federal statute of limitations began to run on October 7, 2016, the date the Washington Court of Appeals issued its mandate terminating direct review; and (2) his assumption that even though the Court of Appeals had yet to issue a certificate of finality in his personal restraint proceedings, the court's issuance of a mandate on October 1, 2020 meant that the decision of the Court of Appeals in his personal restraint proceedings had become final. (*Id*. at 3-4.)

In his response to Respondent's answer, Petitioner again argues that his petition was timely filed, but he steps back from his entirely reasonable "assumption" at the time he filed his petition that the Court of Appeals' issuance of a mandate meant his personal restraint

REPORT AND RECOMMENDATION
PAGE - 4

proceedings had become final, and argues instead that the petition was timely because the mandate issued by the clerk of the Washington Court of Appeals did not properly certify the end of his personal restraint proceeding and, thus, statutory tolling pursuant to § 2244(d)(1) did not end on the date the mandate was issued, October 1, 2020. (Dkt. # 13 at 8.) Petitioner maintains that a personal restraint petition becomes final *only* when a certificate of finality is issued in accordance with Washington Rule of Appellate Procedure ("RAP") 16.15(e), and that a mandate is not the proper document to conclusively signify the end date in a personal restraint proceeding. (*See id*. at 5-7.)

Petitioner further argues in his response that not only did the clerk of the Court of Appeals erroneously issue a mandate instead of a certificate of finality, the clerk also issued the document prematurely as no certificate of finality should have been issued before October 8, 2020, in accordance with RAP 16.15(e)(1) and RAP 12.5(e). (*Id*. at 7-8.) Petitioner maintains that the clerk's actions placed him at a "terrible" disadvantage, leaving him to "guess" if the Court of Appeals might correct the clerk's erroneous filing, and precluding him from seeking an advisory ruling from the Court of Appeals regarding the legal significance of the erroneously filed document given the ticking of the federal statute of limitations clock. (*Id*. at 7.) None of Petitioner's arguments demonstrate that his petition should be deemed timely.

The Court begins by observing that Petitioner apparently misunderstood which event initially triggered the running of the federal statute of limitations. It is evident from the petition that Petitioner started his calculation on the date the Washington Court of Appeals issued its mandate on direct appeal, October 7, 2016. (Dkt. # 4 at 3, ¶ 4.4.) However, the proper starting date was September 27, 2016, the date on which Petitioner's time for seeking certiorari review in the United States Supreme Court expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150-52 (2012).

REPORT AND RECOMMENDATION
PAGE - 5

1  Petitioner does not appear to address this miscalculation in his subsequent briefing, focusing

2  instead on the Court of Appeals' alleged erroneous issuance of a mandate instead of a certificate

3  of finality to signal the end of Petitioner's personal restraint proceedings.

4        There are various provisions within the RAPs that discuss certificates of finality. RAP

5  12.5 governs mandates generally, and it defines a mandate as "the written notification by the

6  clerk of the appellate court to the trial court and to the parties of an appellate court decision

7  terminating review." RAP 12.5(a). Within RAP 12.5 is a subsection specifically addressing

8  certificates of finality, RAP 12.5(e). RAP 12.5(e) defines a certificate of finality as "the written

9  notification by the clerk of the appellate court to the trial court and to the parties of the

10 completion of the proceeding in the appellate court when review is not accepted." RAP 16.15(e)

11 similarly defines a certificate of finality as "the written notification of the clerk of the appellate

12 court to the trial court and the parties that the proceedings in the appellate court have come to an

13 end." In *Phongmanivan v. Haynes*, 195 Wn.2d 309 (2020), the Washington Supreme Court

14 discussed the interplay between the Washington RAPs governing mandates and certificates of

15 finality and confirmed what appears evident from the language of the RAPs that "mandates and

16 certificates of finality are intended to perform a similar function in signaling finality." *Id*. at 315.

17       It is not clear from the record why, in this instance, the clerk of the Court of Appeals

18 issued a mandate rather than a certificate of finality as would typically occur in a collateral

19 review proceeding. There can be no question, however, that the document issued by the clerk in

20 Petitioner's case clearly advised the parties that Petitioner's personal restraint proceedings had

21 become final. The mandate specifically stated as follows: "the opinion of the Court of Appeals of

22 the State of Washington, Division I, filed on September 16, 2019, became the decision

23 terminating review of this court in the above entitled case on October 1, 2020." There is nothing

REPORT AND RECOMMENDATION
PAGE - 6

1  ambiguous about this language. Petitioner is correct that the mandate contained additional
2  language referencing an appeal, which a certificate of finality would not have, but the suggestion
3  that this somehow muddled the message regarding the finality of his personal restraint
4  proceedings is frivolous. The mandate clearly signaled the conclusion of Petitioner's personal
5  restraint proceedings, and the issuance of a mandate instead of a certificate of finality does not
6  alter the fact that Petitioner's personal restraint proceedings became final on October 1, 2020.

7      To the extent Petitioner argues that the clerk of the Court of Appeals prematurely issued
8  the mandate in his personal restraint proceedings, his argument is also unavailing. In instances
9  where a litigant seeks discretionary review by the Washington Supreme Court of a Court of
10 Appeals decision terminating review, a mandate or a certificate of finality may be issued upon
11 denial of the petition for review or the motion for discretionary review. RAP 12.5(b)(3)
12 (mandate); RAP16.15(e)(1)(c) (certificate of finality). Petitioner's assertion that the clerk must
13 wait thirty days to issue either a mandate or a certificate of finality in circumstances such as
14 those presented here is based on a misreading of the rules.

15     Had Petitioner *not* timely sought discretionary review by the Washington Supreme Court
16 of the Court of Appeals' decision denying his personal restraint petition, the thirty-day window
17 referenced by Petitioner in his briefing would apply. *See* RAP 12.5(b)(1) and RAP
18 16.15(e)(1)(a). Because Petitioner *did* seek discretionary review, the rules permitted the clerk to
19 issue a mandate or certificate of finality as soon as the Supreme Court issued its decision denying
20 review. Since the clerk did not issue the mandate until approximately three weeks after the
21 Supreme Court issued its decision, Petitioner actually received the benefit of more statutory

REPORT AND RECOMMENDATION
PAGE - 7

tolling time than he would have if the clerk had issued the mandate as soon as the rules permitted.[2]

The record makes clear that Petitioner filed his federal habeas petition outside the one-year limitations period. The Court therefore turns to Petitioner's argument that he is entitled to equitable tolling of the limitations period.

### B.     Equitable Tolling

The statute of limitations governing federal habeas petitions is subject to equitable tolling in appropriate circumstances. *Holland v. Florida*, 560 U.S. 631 (2010). The Ninth Circuit has made clear that equitable tolling is justified in very few cases, noting that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). A petitioner bears the burden of showing that equitable tolling should be applied. *Id*. at 1065.

In order to receive equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The diligence that is required is "reasonable diligence." *Id*. at 653. "[T]he requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude application of equitable tolling.'" *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Harris v.*

---

[2] Petitioner's argument regarding the impact of the COVID-19 pandemic on his ability to timely file his petition goes to the question of whether Petitioner is entitled to equitable tolling of the limitations period and not whether the petition was timely filed in accordance with 28 U.S.C. § 2244(d). The Court therefore addresses that argument below in the context of Petitioner's equitable tolling argument.

*Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). A petitioner must also establish that the extraordinary circumstance was, in fact, the reason the federal habeas petition was untimely. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Petitioner argues that the COVID-19 pandemic constitutes an extraordinary circumstance in that it severely limited his ability to communicate with counsel during the summer and fall of 2020. (Dkt. # 13 at 9.) According to Petitioner, counsel's law office was closed for many months in 2020 and counsel's office manager was unable to work for significant periods of time, factors which impacted office operations and impaired counsel's ability to handle ongoing legal matters. (*Id*. at 9-10; Dkt. # 14, ¶ 7.) Petitioner claims that he was unable to maintain regular communications with counsel during much of 2020, but that they spoke by telephone in September 2020, shortly after the Washington Supreme Court declined to accept review in his personal restraint proceedings, and he notified counsel at that time that he may wish to file a federal habeas petition but he asked for an opportunity to consider his options before any petition was filed. (*See* Dkt. # 13 at 11; Dkt. # 14, ¶ 9.)

Petitioner asserts that due to circumstances beyond his control, he was unable to complete his discussions with counsel about filing a federal habeas petition before the clerk of the Court of Appeals issued the "premature" mandate in his case on October 1, 2020. (*Id*.) Petitioner maintains that after receiving the mandate, counsel was unable to arrange a confidential legal call in an expeditious fashion to obtain authorization to file the federal habeas petition, and that after counsel finally received authorization on October 6, 2020, he filed the petition the next day. (Dkt. # 13 at 11-12; Dkt. # 14, ¶ 11.) Petitioner also maintains that he has been diligent in challenging his conviction in the Washington courts, and that the short delay in filing his federal

REPORT AND RECOMMENDATION
PAGE - 9

habeas petition cannot reasonably be attributed to a lack of diligence nor has it prejudiced Respondent. (Dkt. # 13 at 12-13.)

The record does not support the conclusion that the pandemic is to blame for Petitioner's untimely filed federal habeas petition. There is no question that the pandemic has been disruptive to individuals, businesses, and institutions nationwide, and it is certainly plausible that pandemic-related restrictions made communications between Petitioner and his counsel more challenging. However, the record before this Court suggests that the actual cause of the untimely filing was the miscalculation by counsel of the federal limitations period.

As explained above, Petitioner represented to the Court in his petition that the federal statute of limitations began to run on the date the Court of Appeals issued its mandate terminating direct review. It appears, however, that Petitioner conflated the rules governing time limitations for seeking collateral review in the state courts and the rules governing the federal statute of limitations. Under Washington law, a judgment becomes final for purposes of filing a collateral attack on a judgment and sentence on the date the appellate court issues its mandate disposing of a timely direct appeal. RCW 10.73.090(3)(b). A collateral attack on a judgment and sentence must be filed in state court within one year of that date. RCW 10.73.090(1). Under federal law, a conviction becomes final for purposes of filing a federal habeas petition upon the expiration of the time for seeking direct review, including the time for seeking certiorari review in the United States Supreme Court. A petition for writ of habeas corpus must be filed in federal court within one year of that date, excepting any time during which a properly filed collateral state challenge is pending. 28 U.S.C. § 2254(d)(1), (2).

Presumably, if Petitioner's counsel had properly calculated the statute of limitations, and had properly understood that Petitioner's personal restraint proceedings could have been

REPORT AND RECOMMENDATION
PAGE - 10

declared final by the appellate courts on the day the Supreme Court issued its decision denying review, counsel would have advised Petitioner when they spoke in September 2020, following the Supreme Court's issuance of its decision, that time was of the essence and that Petitioner had an extremely limited amount of time to consider whether he wanted to file a federal habeas petition. (Dkt. # 14, ¶ 9.) The fact that counsel apparently did not do so strongly suggests that counsel did not, himself, appreciate that time was of the essence.

The Ninth Circuit has made clear that "run-of-the-mill mistakes by one's lawyer that cause a filing deadline to be missed do not rise to the level of extraordinary circumstances." *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015). *See also*, *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (miscalculation of limitations period by counsel does not constitute extraordinary circumstance sufficient to warrant equitable tolling). The Ninth Circuit explained in *Luna* that "[m]istakes of this sort, which amount to nothing more than 'garden variety' negligence, are deemed too routine and unremarkable to warrant equity's intervention." *Luna*, 784 F.3d at 646 (citing *Holland*, 560 U.S. at 651-52). Petitioner's counsel's apparent misunderstanding about when the limitation period commences for federal habeas actions falls squarely within the category of "run-of-the mill mistakes" which the Ninth Circuit has made clear do not warrant equitable tolling.

Because Petitioner filed his federal habeas petition outside of the § 2254 statute of limitation period, and because Petitioner has not demonstrated that he is entitled to equitable tolling of the limitation period, Petitioner's petition is time-barred and must therefore be dismissed.

REPORT AND RECOMMENDATION
PAGE - 11

## C. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability in this matter.

## IV. CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus and this action be dismissed, with prejudice, as untimely under § 2244(d). This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

//
//
//
//
//
//
//
//

## V. OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 4, 2021**.

DATED this 19th day of May, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge